210

[Civ. No. 16421.   Second Dist., Div. Three.   Dec. 17, 1948.]

ERNA BRUCE, Appellant, v. GEORGE BRUCE, Respondent.

Werner O. Graf for Appellant.

Barry M. Woodmansee and Paul D. Holland for Respondent.

SHINN, P. J.—There is before us for consideration an appeal by Erna Bruce from a judgment of divorce granted to George Bruce upon his cross-complaint. Plaintiff, a musician, was married to defendant, a writer of screen plays, on June 11, 1944, and she separated from him July 30, 1945. By their pleadings each accused the other of extreme cruelty. After a trial in which some 40 witnesses gave testimony covering more than 900 pages of reporter's transcript, the issues were found in favor of defendant and judgment was entered granting him a divorce and awarding him the inconsiderable amount of community property that had been accumulated.

Fortunately, the assignments of error are such that we need consider the evidence relating to only one of the situations which formed the basis of plaintiff's charges of cruelty. Three or four claimed errors relate to rulings on the admission of testimony concerning defendant's acquaintance and association with a young Mexican motion picture actress and entertainer who may be appropriately referred to in our opinion as Miss "X." Anonymity is not adopted because the young lady appears in an unfavorable light, but only because we shall have need to refer to accusations of improper conduct on her part, as to which no evidence was received at the trial. Defendant met Miss X in 1943 and, according to his admissions on the stand, developed a lively professional interest in her, which led to his entering into a contract for her exclusive professional services for a compensation of $50 per week. He kept up the payments until about February, 1945, when Miss X obtained employment as an actress, at which time defendant surrendered her contract. Prior to his marriage to plaintiff, he bestowed upon Miss X numerous gratuities, such as expensive articles of wearing apparel and jewelry, but it seems that he made no presents to her thereafter. He saw Miss X frequently until June, 1944, when she went to Mexico. He was sent to Mexico City to prepare material for a motion picture. Miss X was entertaining in Acapulco in military camps. Defendant saw her twice in Mexico City during the last week he was there, both times, he testified, in the presence of others. She returned to Hollywood in November, 1944, and in the next six or eight months defendant saw her four or five times and telephoned her on frequent occasions. His meetings with her were in the offices of her agent or those of other professional people, although on one occasion she came to his house where she visited with defendant, his wife and others, and discussed her professional career.

Early in the trial the court indicated that evidence would not be received as to alleged nonprofessional relations between defendant and Miss X prior to defendant's marriage to plaintiff. Subsequently, plaintiff's attorney made an offer to prove that these relations were of an intimate nature, that defendant had bestowed many presents upon Miss X and that they had lived together in Mexico City prior to defendant's marriage. There was no offer to prove whether plaintiff knew of these alleged relations at the time she married defendant, or when she found out about them, or whether, if

the revelations caused her grief, she had brought it upon herself by manifesting undue curiosity respecting defendant's past life. The argument is made here against the ruling that if it had been shown that there was impropriety in the relations between defendant and Miss X prior to defendant's marriage, it might have been inferred by the court that such impropriety persisted after the marriage. The argument has neither validity nor weight. There was not a particle of evidence produced nor offered which tended in the slightest degree to establish other than a strictly business and professional relationship between the parties subsequent to the date of the marriage. ▓ Defendant was charged with misconduct after he acquired a matrimonial status, and inferences based upon insinuations and accusations could not remedy a complete lack of evidence of misconduct of the type suggested during that period. The law does not act upon mere suspicion, conjecture and doubt.

▓ Defendant was questioned as to whether in Mexico City Miss X had told him that she intended to return to Hollywood and also as to when he learned that she intended to return. Objections to these questions were sustained and the rulings are assigned as error. He was also questioned as to whether during the life of his contract Miss X received any money from employment which he obtained for her. An objection to this question was sustained and the ruling also is questioned. We are unable to see the importance of any evidence that might have been elicited as to the information defendant had concerning the proposed return of Miss X to Hollywood. The most that appeared from defendant's cross-examination was that he had seen her in Mexico a couple of times in the company of other people, and that she had given him a watch which the President of Mexico had bestowed upon her in appreciation of her services for the Mexican Red Cross. Plaintiff was in possession of a letter written in the Hungarian language which defendant had sent her from Mexico City. Apparently this letter, which was placed in evidence, prompted the questioning of defendant as to any arrangement he may have had with Miss X for her return to Hollywood. We have read the letter carefully and believe that a few references to its contents will suffice to show that defendant was displaying no great interest in Miss X. He said of her, "she is still the most beautiful woman in Mexico," and then mentioned the instruction she was receiving in Spanish music and songs, and he requested that his

assistant be reminded to issue her salary checks. But these brief references to the young lady were merely incidental to the main theme of the letter. Defendant had been captivated by the bull fighters and the bulls, and for the time being had discarded the fascinations of Hollywood for those of Mexico City. As translated, the letter said, in part, "—I am busy cultivating toreros and absorbing two or three centuries of the drama and history of bull fighting." Of a young bull fighter named Toscano he wrote, "I have never met such a brilliant, fine, wholesome character. He has been my guide, my teacher, my companion, and my inspiration since the day I arrived." He wished to bring Toscano home with him. He wrote, "I have met every matador who is in town, every outstanding oficianado. . . . Matadors are an expensive luxury and live in the grand manner." He had watched the bull fighters' training sessions early in the morning, had gone to the country to witness provincial fights, had been in the corrals with the bulls, and he said, "on Monday I am going to La Punta . . . and while there I am going to try my hand with a muleta. Merely to get the feeling of the matador when he faces a bull. Of course, it would be a diminutive sensation, because I am going to play with very young bulls, around two years of age." There were many references to the natural beauties of Mexico, which indicated that defendant was enjoying a respite from the Hollywood scene. The letter should have been reassuring to plaintiff. There was nothing in it which tended to prove intrigue with Miss X, or to call for a more extended cross-examination than had been allowed concerning defendant's stay in Mexico. It appears from the record that the court was extremely indulgent in permitting exhaustive cross-examination of defendant. It was carried to great lengths, with few objections on the part of defendant's attorney or the court.

Another claimed error consisted of the admission in evidence of the file of a case in which plaintiff had been divorced from a former husband. Apparently the only purpose was to show the date of her former marriage, and it does not appear that the file was used for any other purpose or that the use of it was in any way harmful to plaintiff. The claims of error are trivial and wholly without merit.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.